UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | )    CRIM. NO. 05-10199-RWZ |
| | ) |
| | ) |
| PASCUAL JOSEPH GUERRIER | ) |

MEMORANDUM IN AID OF SENTENCING

The defendant Pascual Joseph Guerrier respectfully submits this memorandum in aid of sentencing. The sentencing is set for March 9, 2006. Counsel requests the Court to impose a prison sentence of 12 months and a day followed by a three-year term of supervised release.[1] Counsel submits that this sentence satisfies the requirements of 18 U.S.C. §3553(a), as it takes into account the personal history and characteristics of Mr. Guerrier, reflects the seriousness of the offense, adequately deters further criminal conduct, and is reasonable in light of the advisory sentencing guidelines.

GUERRIER'S OFFENSE CONDUCT

Pascual Joseph Guerrier acted as a middleman in a series of heroin sales that were initiated by a cooperating

---

[1] Mr. Guerrier is a foreign national and will almost certainly be deported at the end of his prison term.

1

witness for the authorities.  There were four separate transactions that occurred over a seven-month period between the fall of 2004 and the spring of 2005.  The total quantity of heroin transferred during these sales was approximately 261 grams.

## THE DEFENDANT'S PERSONAL BACKGROUND

Mr Guerrier is 36 years old.  He is from the Dominican Republic and was a legal permanent resident of the U.S. when these offenses occurred.  Though Mr. Guerrier lived alone in the town of Lawrence, he was supporting a large group of family members back home in the Dominican Republic with his earnings here; he worked as a barber.

Mr. Guerrier's childhood was one of extreme privation.  He was very tearful when recounting it and described it as "the worst that could have been."  He and his siblings were raised by their mother, Cecelia Guerrier, who worked as a washerwoman in a Dominican village.[2]  The family often went hungry and had no clothing or shoes.  Often they were homeless.  Cecelia Guerrier would be abused physically and her children were beaten by strangers simply for being poor.

---

[2] Guerrier's father Esperanza Joseph abandoned the family when Pascual was very young and had no involvement in raising or supporting his children.

2

Pascual attended school for a time but quit at age 10 so that he could work. He worked as a shoeshine boy and sold fruit from a cart. As a teenager he worked as a short-order cook; he taught himself how to cut hair and later took a hair-styling course at a beauty school. When he was 25 years old, Mr. Guerrier made his way to Puerto Rico, where he gained his LPR status. In 1997 he came to the American mainland and settled in Lawrence, Massachusetts.

Before his incarceration, Mr. Guerrier supported a large number of his relatives in the D.R. The group consists of his own five children[3], his sister Jimena, his half-brothers Santiago Joseph-Garcia and Osber Joseph-Garcia, two nephews, and a niece.[4] All of these relations live together in a single household. His inability to support these family members now is an unending source of anguish to him.

Counsel wishes to address the issue of Mr. Guerrier's motivation for joining this conspiracy. The picture that emerges of Mr. Guerrier is of a simple man who has lived a spartan life. Pascual Guerrier has worked hard his entire

---

[3] See ¶¶ 53-57, PSR; they range in ages from 8 to 15.

[4] Mr. Guerrier's niece and nephews are the children of his dead brother Chi Chi. ¶48, PSR.

life. He has demanded very little for himself over the years, and is clearly not accustomed to having much in the way of non-essentials. He has lived a solitary life, and was living thus when he became involved in this scheme. Counsel believes that he was induced to become involved in these transactions because of his pressing financial responsibilities to his family in the Dominican Republic. Although Mr. Guerrier acknowledged a history of recreational marijuana use, see ¶69, PSR, he lived a law-abiding life up to the time of his involvement with "Jochi" and "Junito," the other participants in these transactions. There are no other entries in his criminal history. This conduct is certainly not in keeping with the way in which Mr. Guerrier had conducted his life up to that point.

### SENTENCING RECOMMENDATION

Counsel is asking this Court to sentence Mr. Guerrier to a prison term of 12 months and a day. While this sentence is lower than the advisory guideline range, a variance from the range is warranted here. As noted above, Mr. Guerrier has always been a hard worker who takes his family obligations very seriously. He has children whom he supports; their suffering will only increase if he is incarcerated for a long period. See ¶¶ 46, 65, PSR.

Finally, Guerrier's participation in this scheme was not in keeping with his normal character.  While he perhaps would not qualify for an aberrant behavior departure under traditional guidelines analysis, see USSG §5K2.20, nonetheless his guilt for this conduct in manifestly an aberration in his life and not consistent with his general history.

In sum, after considering the advisory guidelines and the sentencing factors set out in 18 U.S.C. §3553, this court should impose a sentence that is appropriate to this individual.  Counsel submits that in this case, a sentence of 12 months and a day followed by a period of supervised release of 3 years is fair and just.

>Respectfully submitted,
>
>By His Attorney,
>
>/s/ Syrie Davis Fried
>   BBO # 555815
>Federal Defender Office
>408 Atlantic Avenue
>Boston, MA 02110
>(617) 223-8061

CERTIFICATE OF SERVICE

I, Syrie D. Fried, do hereby certify that this document has been filed electronically and that it will be served electronically to registered ECF participants as identified on the Notice of Electronic Filing (NEF) on March 7, 2006.

/s/ Syrie D. Fried
Syrie D. Fried